UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 23-cv-23654-BLOOM/Torres**

RICHARD C. MURPHY, III; and
KATHLEEN T. MURPHY

    Plaintiffs,

       vs.

AIRWAY AIR CHARTER INC.
d/b/a Noble Air Charter; VENTURE
AIR SOLUTIONS, INC.;
ALEX GUTIERREZ, individually; and.
ATLANTIC AVIATION – OPA LOCKA
LLC d/b/a Atlantic Aviation,

    Defendants.

_____/

## ORDER ON PARTIES' MOTIONS *IN LIMINE*

**THIS CAUSE** is before the Court upon the parties' Joint Summary of the Parties' Motions *in Limine*, ECF No. [142]. The Court has reviewed the Motions, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, the Parties' Motions *in Limine* are granted in part and denied in part.

### I.   BACKGROUND

Plaintiffs Richard and Kathleen Murphy originally filed this action against Defendants AirWay Air Charters Inc. d/b/a Noble Air Charter ("Noble"), Alex Gutierrez, and Venture Air Solutions, Inc. ("Venture") on April 25, 2022, in the Circuit Court for the Eleventh Judicial Circuit for Miami-Dade County, Florida, styled *Murphy v. Airway Air Charter, Inc. et al*, Case No.: 2022-007616-CA-01. Defendant Atlantic Aviation-Opa Locka ("Atlantic") thereafter removed this case on the basis of federal question and admiralty jurisdiction pursuant to 28 U.S.C. §§ 1331, 1333,

1441, and 1446. *See* ECF No. [1]. Once removed, Plaintiffs filed their Fourth Amended Complaint on December 22, 2023, ECF No. [37]. The Fourth Amended Complaint alleges Noble (Count I) and Gutierrez (Count II) are liable for Richard Murphy's injuries under Article 17 of the Warsaw Convention. *Id.* ¶¶ 22-35. Count III alleges a vicarious liability claim against Venture in authorizing Gutierrez to operate the subject aircraft.[1] Count IV alleges a negligence claim against Atlantic for failing to properly fuel the subject aircraft. *Id.* ¶¶ 36-42. The parties are scheduled to proceed to trial on October 7, 2024. In anticipation of the upcoming trial, the parties have submitted their Joint Summary of Motions *in Limine*. ECF No. [142].

## II.   LEGAL STANDARD

### A.  Motions *in Limine*

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. June 10, 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder*

---

[1] On June 25, 2024, the Court entered summary judgment on Count III in favor of Defendant Venture Air Solutions, Inc. *See* ECF No. [67].

*v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co*., No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *see In re Seroquel.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.") (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)); *see United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). Rule 403's "major function ... is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect[.]" *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (quoting *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir.1991)).

## III.    DISCUSSION

### A.  Defendant Noble's Motions *in Limine*

Defendant Noble moves to preclude the following four topics as evidence at trial:

**i. Any Evidence and Testimony of Fuel Being Placed in the Auxiliary Tanks**

Noble first requests that the Court exclude all evidence and testimony regarding the fuel being placed in the auxiliary tanks. ECF No. [142] at 4. Specifically, Noble asserts that Plaintiffs' expert, Mark Pottinger, and Atlantic's expert, Doug Stimpson, "are expected to provide pure opinion testimony that fuel was placed in the Auxiliary tanks and not the Main Tanks" without any evidence to support that contention. *Id.* Noble argues that by adopting *Daubert*, the Florida legislature has made clear that pure opinion testimony is no longer admissible.

Plaintiffs oppose Noble's motion by incorporating all of their arguments from Plaintiffs' response in opposition to Atlantic's motion for summary judgment.

Defendant Atlantic also opposes Noble's motion and maintains that, despite Noble's argument to the contrary, Stimpson's opinions regarding the fuel being placed in the auxiliary tanks "are based on record evidence, including surveillance video and witness testimony." ECF No. [142] at 6. Moreover, Atlantic notes that, notwithstanding the fact that Stimpson's opinions were included in his expert report, Noble never filed a *Daubert* motion to exclude any of Stimpson's opinions. Atlantic claims there is no basis under *Daubert* to exclude Stimpson's opinions on the location of the fuel because his opinions are "appropriately based on record evidence and [ ] were formed through appropriate methodology, including the procedures and techniques set forth in the International Civil Aviation Organization (ICAO) Annex 13 Manual of Aircraft Accident Investigation." *Id.*

As a preliminary matter, Noble's first motion is untimely. While Noble characterizes its first motion as a motion *in limine*, the motion is plainly a *Daubert* motion. Noble's basis for excluding Pottinger and Stimpson's testimony is that their testimony is "disallowed by Daubert." ECF No. [142] at 4. The deadline to file all *Daubert* motions was July 3, 2024. *See* ECF No. [22].

Noble offers no good cause for why the Court should consider this untimely motion. Therefore, the Court may deny the motion on that basis alone. *See DS Waters of America, Inc. v. Fontis Water, Inc.*, Civ. Act. No. 1:10-cv-0335-SCJ, 2012 WL 12875685, at *2 (N.D. Ga. Dec. 31. 2012) ("As noted by the Eleventh Circuit, a court may decline to consider an untimely Daubert motion.") (citing *Quite Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1349 (11th Cir. 2003)). However, even considering Noble's first motion on the merits, it must still be denied.

Noble previously attempted to exclude Pottinger's testimony as pure opinion testimony in its *Daubert* motion. As the Court thereafter explained in its Omnibus Order on September 6, 2024, ECF No. [111], Pottinger's opinion that the auxiliary tanks were filled is not mere speculation. Pottinger ruled out alternative explanations for the accident and "reached his opinion by applying his expertise to contrary record evidence 'such as the obstructed video footage of the service line technician fueling the aircraft, a systemic fueling chart of the aircraft, and the service line technician's deposition in which he testified that the location of the auxiliary tanks was the location of the main tanks.'" ECF No. [111] at 17-18. Because the Court has already found that Pottinger utilized a reliable methodology to form his opinion that the auxiliary tanks rather than the main tanks were filled, the Court denies Noble's request to exclude Plaintiffs' expert testimony.

The Court similarly denies Noble's request to exclude Stimpson's expert opinion testimony. After reviewing Stimpson's expert report, the Court finds that reliable methodologies were used by Stimpson in forming his opinions. He formed opinions based on facts in the record and utilized approved procedures and techniques set forth in the International Civil Aviation Organization (ICAO) Annex 13 Manual of Aircraft Accident Investigation. *See* ECF No. 80-1. Because Stimpson's testimony will also assist the trier of fact in understanding the evidence, exclusion is not warranted and Noble's first motion *in limine* is denied.

### ii. Any Evidence Related to Lost Profits Including Evidence of Damages Related to Lost Profits

Noble moves to exclude any evidence related to lost profits or evidence of damages related to lost profits. Noble asserts that it has conducted thorough written discovery and has sought a deposition of Plaintiff Richard Murphy and has uncovered no evidence of any lost profits. ECF No. [142] at 7.

Neither Plaintiffs nor Atlantic oppose Noble's motion to exclude evidence of lost profits. Accordingly, Noble's second motion *in limine* is granted.

### iii. The Bahamian AAIA Report

Noble seeks to exclude the Bahamian Aircraft Accident Investigation Authority Report ("AAIA Report") on several grounds. First, Noble points out  that, pursuant to the Bahamian Aircraft Accident Investigation Authority Act, 2019, final AAIA reports "shall not be used as evidence in any court proceeding or in other proceedings related to apportioning blame or liability." ECF No. [142] at 9. Noble also argues that the AAIA Report is inadmissible because it "contains hearsay, irrelevant, speculative, untrustworthy, and inadmissible information." *Id.* Moreover, Noble contends no party is calling any witness who is capable of authenticating the AAIA Report.

Plaintiffs assert they do not intend to put the AAIA Report itself into evidence. However, Plaintiffs intend to have their expert testify that he relied on the AAIA Report in forming his opinions.

Atlantic argues the AAIA Report is admissible and intends to introduce it into evidence. According to Atlantic, "the report in question is not an NTSB report and therefore, 49 USC [§] 154(b) simply does not apply." ECF No. [142] at 11. Atlantic argues even if the Court were to

analogize the AAIA Report to an NTSB report, there are two different kinds of NTSB reports: (1) board accident reports; and (2) factual accident reports. Atlantic explains that while board accident reports are generally inadmissible at trial, "factual accident reports from the NTSB are admissible at trial" *Id.* (quoting *Escobar v. Nevada Helicopter Leasing LLC*, Case No. 13-00598 HG-WRP, 2020 WL 104672, at *4 (D. Haw. Jan. 8, 2020)). Atlantic contends the AAIA Report is more akin to a NTSB factual report and is therefore admissible. Additionally, Atlantic notes this case is not governed by Bahamian law. Therefore, the Bahamian Aircraft Accident Investigation Authority Act's prohibition against the use of final reports in a court proceeding is inapplicable. *Id.*

The Court finds the AAIA Report has the potential to be admissible and Noble's arguments for exclusion are without merit. Although the Bahamian Aircraft Accident Investigation Authority Act, 2019 states that "[f]inal reports shall not be used as evidence in any court proceeding or in other proceedings related to apportioning blame or liability[,]" Plaintiffs' claims are governed by Florida law, not Bahamian law. Therefore, as the Court noted in its earlier Omnibus Order, the admissibility of the AAIA Report under Bahamian law is wholly irrelevant. *See* ECF No. [111] at 30.

To the extent Noble attempts to exclude the AAIA Report under 49 U.S.C. § 1154(b) by analogizing the Report to a National Transportation Safety Board report ("NTSB report"), the Court is also unpersuaded. As the Court already explained, 49 U.S.C. § 1154(b) exclusively governs the disclosure of reports by the National Transportation Safety Board. Therefore, since the AAIA Report is not a NTSB report, 49 U.S.C. § 1154(b) is inapplicable.

Regarding Noble's claims that the AAIA Report "contains hearsay, irrelevant, speculative, untrustworthy, and inadmissible information, Noble offers no compelling argument in support. The Court declines the invitation to exclude a report based on broad and vague assertions about

the Report's inadmissibility. The only specific arguments Noble asserts as a basis for exclusion are that the makers of the Report did not consult the pilot and that no party intends to call a witness to authenticate the Report. However, neither of those arguments is sufficient to warrant exclusion. While the pilot may have been a useful person to contact during the investigation process, the Bahamian Aircraft Administration Investigation Authority's failure to do so does not inevitably make the Report inadmissible. Noble offers no case law supporting the conclusion that a failure to interview a witness makes an investigative report inherently inadmissible. Regarding Noble's argument that there is no witness the parties intend to call to authenticate the Report, this issue can be resolved at trial as it appears Atlantic intends to authenticate the AAIA report under the public records exception. *See* Fed R. Evid. 902(3) (providing for self-authentication of foreign public documents). Since Noble fails to show that the AAIA Report is inadmissible on all potential grounds at this juncture, Noble's third motion *in limine* is denied.

### iv. Any Evidence of Damages Not Recoverable Under the Montreal Convention

Noble seeks to exclude any evidence of damages that are not recoverable pursuant to the Montreal Convention. Specifically, Noble requests that all evidence of Mr. Murphy's emotional damages be excluded and points out that the Court previously found that the Montreal Convention applies. Noble contends that the Montreal Convention provides limitations of liability, including that "a plaintiff cannot recover emotional damages unless they are 'sufficiently connected to physical injury.'" ECF No. [142] at 12 (quoting *In re Am. Airlines Flight 331*, No. 10-20131-CV, 2013 WL 12340392, at *3 (S.D. Fla. Aug. 15, 2013)). Noble argues that since Mr. Murphy's claimed emotional damages are not directly connected to a particular injury sustained in the plane crash, but arise more generally from the accident itself, evidence of Mr. Murphy's emotional

damages must be excluded pursuant to the limitations set forth in the Montreal Convention. ECF No. [142] at 12.

Plaintiffs respond that "[e]motional harms are recoverable regardless of whether those harms are caused directly by the physical injuries suffered by Plaintiff." *Id.* at 13.

The Court does not find that the Montreal Convention limits Mr. Murphy's ability to recover emotional damages in this case. Indeed, courts have consistently held that emotional damages are only recoverable when the emotional harms are a result of physical injuries. *See In re American Airlines Flight 331*, Case No. 10-20131-CV-LENARD/O'SULLIVAN, 2014 WL 12809819, at *3 (S.D. Fla. Jan. 23, 2014) ("emotional injury is compensable under the Montreal Convention only if it is caused by physical injury"); *Jacob v. Korean Air Lines Co. Ltd.*, 606 F. App'x 478, 482 (11th Cir. 2015) ("[A]t best, 'mental injuries are recoverable under Article 17 only to the extent that they have been caused by bodily injuries.'") (quoting *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 400 (2d Cir. 2004)). However, Plaintiffs do not concede that Mr. Murphy's emotional damages are not the product of any physical injuries he suffered in the plane crash. Therefore, to the extent testimony or other evidence can establish that Mr. Murphy's emotional harms were a direct result of the physical injuries he suffered, emotional damages are recoverable and the evidence is admissible. *See In re Am. Airlines Flight 331*, Case No. 10-20131-CV-LENARD/GOODMAN, 2014 WL 12809892, at *3 (S.D. Fla. Apr. 4, 2014) (finding "sufficient evidence to sustain recovery by Plaintiff for emotional-harm damages relating to her anxiety and stress from her neck, lower back, and right shoulder injuries and her feeling anxious and depressed from the inability to engage in certain activities as she did prior to the December 2009 crash."). Accordingly, Noble's fourth motion *in limine* is denied.

### B. Defendant Atlantic's Motions *in Limine*

Defendant Atlantic moves to preclude evidence or arguments regarding the following eleven topics at trial[2]:

### i. Preclude Argument, Evidence, or Testimony Regarding Spoliation or Preservation of Videos

Atlantic moves to preclude Plaintiffs from offering any arguments, evidence, or testimony regarding Atlantic's preservation of video surveillance footage.Specifically, Atlantic requests that the Court prohibit Plaintiffs from introducing evidence or testimony "encouraging the jury to infer Atlantic's failure to preserve additional footage must mean [Atlantic was] negligent in fueling the Aircraft." ECF No. [142] at 14. Atlantic contends any such evidence or testimony should be excluded pursuant to Federal Rules of Evidence 401 and 403. According to Atlantic, evidence regarding its post-crash conduct is simply irrelevant as such evidence has no bearing on the issues in this case, i.e., "whether or not Atlantic breached a duty at the time of fueling, and whether such breach was the proximate cause of the crash." ECF No. [142] at 14.

Atlantic contends that the evidence is not relevant, and the probative value is "substantially outweighed by the danger of unfair prejudice, wasting time, confusing the issues, and misleading the jury." *Id.* Atlantic argues that it would be unfair for Plaintiffs to make arguments involving the spoliation of evidence when Atlantic had no duty to preserve the footage and there is no evidence that Atlantic acted in bad faith by failing to maintain the footage. Additionally, Atlantic contends introducing this type of evidence would also invite the jury to unjustly infer an adverse inference

---

[2] Defendants Noble and Gutierrez filed a notice of joinder as to all of Atlantic's motions *in limine* except Atlantic's motion to preclude argument, evidence or testimony regarding spoliation or preservation of videos, and Atlantic's motion to exclude testimony and records from Drs. Levi, Baker and Spiroff. *See* ECF No. [139].

against Atlantic, mislead the jury into "speculating that Atlantic concealed, altered, or destroyed evidence[,]" and would result in "a waste of time and resources" on an "entirely peripheral issue." *Id.*

Plaintiffs respond that regardless of whether Atlantic acted in good faith, Atlantic's action led to the destruction of evidence. Therefore, Plaintiffs may still argue the evidence existed and was not preserved. According to Plaintiffs, even when a party prejudiced by the destruction of evidence is not moving for a spoliation sanction or seeking a spoliation instruction, "they may still introduce evidence of failure to preserve relevant data." ECF No. [142] at 15.

Defendants Noble and Gutierrez also oppose Atlantic's motion and argue that, but for Atlantic's failing to persevere the video in question, the parties could have conclusively determined which tanks Atlantic put the fuel in. *Id.* at 16. Given Atlantic's failure to preserve this important evidence, "Noble and Gutierrez seek an inference that the main tanks were serviced by Atlantic." *Id.* at 16.

The Court agrees with Atlantic that any evidence regarding its purported failure to preserve video footage is inadmissible under the circumstances where (1) Plaintiffs are not seeking spoliation sanctions, (2) Atlantic was under no duty to preserve any such footage, (3) the record otherwise fails to support that Atlantic should have preserved additional footage or that its failure to preserve was done in bad faith. *See* ECF No. [111] at 25 (wherein the Court explained why testimony regarding Atlantic's alleged destruction of evidence is inadmissible). Although it is true that courts have still allowed a party to introduce evidence of the destruction of evidence to the jury even where the moving party failed to show bad faith or otherwise prove spoliation, the decision whether to admit such evidence is left to the sound discretion of the district judge. *See, e.g.*, *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *7 (M.D. Fla.

11

2007). As there is no evidence in the record of bad faith or misconduct on the part of Atlantic, the Court finds no probative value to the proposed evidence. Indeed, Plaintiffs fail to provide any other purpose for the evidence other than to create an inference that, because the video no longer exists, Atlantic must be responsible for improperly filling the fuel tanks. Accordingly, the probative value that any evidence or testimony regarding the failure to preserve the video could provide would be substantially outweighed by the risk of potential prejudice. Therefore, the Court excludes any such evidence or testimony on Rule 403 grounds.

The Court also rejects Noble and Gutierrez's request for an adverse inference that the main tanks were serviced by Atlantic. Their request is not a request to present evidence, but rather a request for spoliation sanctions yet they provide no basis for such sanctions. To receive spoliation sanctions, the moving party bears the burden of proving "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Managed Care Solutions, Inc., v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (quoting *Walter v. Carnival Corp.*, No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)); *see Sharp v. City of Palatka*, No. 3:06–cv–200–JTEM, 2008 WL 89762, at *1 (M.D. Fla. Jan. 7, 2008) (same). Additionally, once all three elements are met, "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absence of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." *See Walter*, 2010 WL 2927962 at *2 (quoting *Bashir v. Amtrack*, 119 F.3d 929, 931 (11th Cir. 1997)). Noble and Gutierrez have failed to make any showing that Atlantic had a duty to preserve the video evidence in question. As such, even were Noble and Gutierrez able to prove Atlantic acted in bad faith and the evidence is crucial to their case, a spoliation sanction

would not be warranted. The Court grants Atlantic's first motion *in limine*.

### ii. Exclude Video Recorded Statements of Plaintiff Richard Murphy

Atlantic's seeks to exclude three videos in which Plaintiff Richard Murphy recounts the events of the accident. Plaintiffs do not oppose the motion as they do not intend to introduce those videos into evidence. No other parties raised objections. As such, Atlantic's second motion *in limine* is granted.

### iii. Preclude Medical Testimony and Opinions from Plaintiffs and Other Lay Witnesses

Atlantic moves to preclude Plaintiffs and any other lay witnesses from providing medical testimony or opinions regarding the injuries Plaintiff Richard Murphy sustained in the plane crash. Atlantic contends that while "Plaintiff may testify regarding his perception of his pain and symptoms he experiences, Plaintiff is not competent to testify about any medical diagnosis, injury, condition, or any future prognosis" as he is a lay witness, not a medical expert. ECF No. [142] at 19. Additionally, Atlantic asserts that Mr. Murphy, as a lay witness, may not offer an opinion on the cause of his injuries as medical causation is beyond the scope of a layperson's knowledge. Atlantic notes Mr. Murphy also cannot testify to what a treating physician may have told him as such testimony would constitute impermissible hearsay. Since Mr. Murphy has not designated any medical experts to testify as to his conditions or to proffer any medical causation opinion, Atlantic requests that the Court preclude Plaintiffs from using a lay witness to introduce any medical opinion or medical causation testimony.

Plaintiffs argue Mr. Murphy "should be permitted to testify fully what he experienced as injuries, including any symptoms related to the mental anguish he experienced post[-]accident." ECF No. [142] at 20. Plaintiffs argue the case Atlantic relies upon, *Wingster v. Head*, 238 F. App'x.

809, 814 (11th Cir. 2009), does not support excluding Mr. Murphy's anticipated testimony regarding his injuries. Moreover, Plaintiffs contend that Atlantic should not be able to "muzzle the Plaintiff from being able to describe what his injuries are and how they have affected him." ECF No. [142] at 20.

The Court will exclude Mr. Murphy's anticipated testimony only to the extent Mr. Murphy intends to testify as to specific medical diagnoses and the medical cause of his alleged injuries. While "medical diagnoses and medical causation opinions ordinarily present technical and scientific issues that require specialized knowledge of an expert witness," as Atlantic admits, a plaintiff "may [nevertheless] testify to personal perceptions of his own physical or emotional state" both before and after an incident. *In re American Airlines Flight 331*, Case No. 10-20131-CV-LENARD/O'SULLIVAN, 2013 WL 12340397, at *2 (S.D. Fla. Oct. 24, 2013) (citing *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1306 (11th Cir. 1985)). Under Florida law, a plaintiff must rely on expert opinion regarding medical diagnosis and medical causation when the causal link between injuries and the incident are not readily apparent. *See Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023) ("Looking to Florida negligence law, we find the same rule: non-readily observable injuries require expert medical evidence to prove causation.") (citing *Crest Prods. v. Louise*, 593 So. 2d 1075, 1077 (Fla. 1st DCA 1992) and *Wausau Ins. Co. v. Tillman*, 765 So. 2d 123, 124 (Fla. 1st DCA 2000) (collecting cases)). Therefore, because Mr. Murphy's purported back fracture and PTSD are not readily apparent injuries, Mr. Murphy cannot testify to his particular diagnoses or that the plane crash was the medical cause of those injuries. *See Harrell v. Carnival Corp.*, Civ. Act. No. 5:10–CV–044(CAR), 2021 WL 6927557, at * 4 (S.D. Fla. Dec. 3, 2021) (identifying plaintiff's "non readily observable injuries" to be her "fractured or sprained ankle, nerve damage, CRPS, depression, post-traumatic stress disorder, and anxiety"). However,

14

Mr. Murphy may still give lay opinions that are based on his own personal knowledge, such as his symptoms before and after the crash. Additionally, Mr. Murphy may also "testify that emotional distress resulted from certain physical injuries." *In re American Airlines Flight 331*, 2013 WL 12340397, at *2 (citing *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) ("Plaintiff may testify as to her own mental suffering and her lay opinion as to its cause.") (citations omitted) and *Shojeai v. United States*, No. 5:11-cv-247-Oc-10-TBS, 2013 WL 145763, at *2–3 (M.D. Fla. Jan. 14, 2013) (allowing a plaintiff to testify that her arrest and incarceration caused her emotional damages without the need for medical expert testimony.)). Thus, while the "Court will not wordsmith Plaintiff's anticipated testimony about the injuries he allegedly suffered," the Court will preclude Mr. Murphy from providing his own expert testimony regarding his diagnosis and the medical cause of that diagnosis. *White v. Mesa*, Case No. 1:17-cv-23940-UU, 2018 WL 8809237, at *4 (S.D. Fla. Aug. 28, 2018). As such, Atlantic's third motion *in limine* is granted only to the extent Atlantic seeks to preclude Mr. Murphy from providing expert testimony.

### iv. Preclude Treating Providers from Offering Causation Opinions, Testifying to Undisclosed Opinions, or Testifying to Treatment Outside of Their Own

Atlantic seeks to preclude Mr. Murphy's treating physicians, Dr. Ronald Tolchin and Dr. Ramon Estape, from "testifying regarding the diagnoses and treatment of other treaters" for several reasons. Atlantic claims since neither doctor was retained, and therefore did not provide a written report, Atlantic is forced to rely on vague disclosures that offer little insight as to what opinions the doctors will offer and what factors the doctors relied upon. Additionally, since Plaintiffs did not identify any treatment records their physicians reviewed, nor did they disclose any opinions from their physicians regarding the necessity of any treatment beyond their own, Atlantic claims

any such testimony about another doctor's treatment would be outside the scope of their limited expert designations and would be inadmissible as the testimony would be beyond the scope of the treating physicians' personal knowledge.

Atlantic also argues that Dr. Tolchin and Dr. Estape should be prohibited from offering medical causation testimony at trial. Plaintiff's disclosures do not indicate that either physician intended to proffer expert causation testimony. Since Dr. Tolchin does not need to know how Plaintiff was injured in order to treat him, Plaintiff may not use the treating physician as a basis to offer an opinion on medical causation.

Plaintiffs respond and contend that Dr. Tolchin and Dr. Estape may testify that the medical issues Mr. Murphy is suffering are a result of the plane crash because a treating physician may "offer any opinion they came to as a result of [the physicians] care and treatment of the Plaintiff." ECF No. [142] at 22.

Atlantic is mistaken that Plaintiffs' treating physicians may not provide medical expert testimony and that any testimony must be limited to their personal knowledge. While historically courts have held that, pursuant to Rule 26, non-retained treating physicians who do not provide an expert report are precluded from providing expert medical testimony, those holdings are no longer good law. In *Cedant v. United States*, the Eleventh Circuit explained non-retained experts may provide expert medical testimony, including expert medical causation testimony, even though such experts are, by default, only required to provide a limited disclosure. *See* 75 F.4th 1314, 1325 (11th Cir. 2023) ("Cedant was also right that such non-retained experts generally are not required to file a Rule 26(a)(2)(B) report simply because they are testifying on a specific subject, such as causation"). The Eleventh Circuit clarified that whether an expert witness is required to provide a disclosure under Rule 26(a)(2)(C) or a detailed written report under Rule 26(a)(2)(B) is not

dictated by the subject matter of the expert's intended testimony but instead whether the expert is retained or not retained. *See id.* at 1324. Because Dr. Tolchin and Dr. Estape are non-retained experts, they do not have to supply a written report providing the level of detail expected from a retained expert in order to offer medical opinion testimony. Dr. Tolchin and Dr. Estape's status as non-retained experts has no impact on the scope of their testimony. *See id.* ("The expert's job title, the subject or scope of his testimony, and the way that he formed his opinions are irrelevant inquiries for Rule 26(a)(2) purposes. The only question presented by the Rule's text is whether the witness was retained as an expert or otherwise employed as described in Rule 26(a)(2)(B)."). Accordingly, since Plaintiffs' non-retained experts have satisfied the Rule 26(a)(2)(C) disclosure requirements, the Court will not limit Dr. Tolchin or Dr. Estape's intended testimony. Thus, Atlantic's fourth motion *in limine* is denied.

### v. Preclude Testimony or Evidence Regarding Speculative Future Surgery

Atlantic seeks to preclude testimony or evidence regarding Mr. Murphy's need for future surgery as all such evidence would be "purely speculative." ECF No. [142] at 23. Atlantic maintains that a plaintiff may only recover future medical expenses that are reasonably certain to be incurred. A mere possibility that treatment will be needed in the future is insufficient. Atlantic claims since Plaintiffs have not designated a medical expert or a treating surgeon who intends to opine on the medical necessity of Mr. Murphy's future need for surgery, Plaintiff will not be able to establish the need for future surgery with a reasonable degree of certainty. Atlantic contends Plaintiffs only identify Dr. Tolchin as witness who may opine on this issue, and he has no records, nor has he made any assertions that any future surgery is necessary to a degree of reasonable certainty.

Plaintiffs respond that both Dr. Tolchin and Dr. Estape should be able to testify that Mr. Murphy's medical conditions are a product of the plane crash. Plaintiffs again argue that Mr. Murphy's treating physicians "can offer any opinions they came to as a result of their care and treatment of the Plaintiff." ECF No. [142] at 24. However, Plaintiffs make no specific argument for why Mr. Murphy's treating physicians are permitted to opine on whether Mr. Murphy will require surgery in the future.

To the extent that Plaintiffs intend to offer speculative testimony about Mr. Murphy's need for future surgery, such testimony is excluded. "Only those future medical expenses that are reasonably certain to be incurred are recoverable as damages in a personal injury action, and it follows that a recovery of future medical expenses cannot be grounded on the mere possibility that certain treatment might be obtained in the future." *Stern v. NCL Bahamas Ltd.*, Case No. 19-20280-CIV-MORENO/LOUIS, 2020 WL 6822979, at *4 (S.D. Fla. Sept. 23, 2020). Plaintiffs offer no record evidence that Mr. Murphy's treating physicians have recommended that Mr. Murphy will need surgery in the future. The only evidence to support the contention that Mr. Murphy will require surgery in the future is Dr. Tolchin's expert disclosure, wherein Dr. Tolchin indicates Mr. Murphy's injuries are "permanent and *may* require future surgery." ECF No. [57] at 3 (emphasis added). However, the mere possibility of future surgery is an insufficient basis for the jury to award damages. *See Iglinski v. Elec. Ins. Co.*, Case No. 8:21-cv-1304-VMC-JSS, 2021 WL 2284135, at *2 (M.D. Fla. June 4, 2021) ("And although Electric Insurance attempts to use Iglinski's medical providers' opinions that she may need additional medical care in the amounts of $77,104.00, $91,770.00, $1,219, and $158,064.00 for various treatments, the mere possibility of future medical care is too speculative to support such a finding.") (citing *Favors v. Dolgencorp, LLC*, No. 14-cv-60267-KMM, 2014 WL 11775522, at *2 (S.D. Fla. Nov. 3, 2014)).

Therefore, because there are no medical records indicating with a reasonable degree of medical certainty that Mr. Murphy will more likely than not require surgery in the future, testimony on the need for future surgery is too speculative to be admissible. As such, Atlantic's fifth motion *in limine* is granted.

### vi. Preclude Argument, Testimony, or Evidence that Plaintiff was Diagnosed with Post-Traumatic Stress Disorder

 Atlantic seeks to preclude evidence or testimony that Mr. Murphy suffers from Post Traumatic Stress Disorder ("PTSD") as a result of the plane crash. Atlantic argues that neither of Mr. Murphy's treating physicians disclosed opinions regarding Mr. Murphy's PTSD and neither physician diagnosed Mr. Murphy with PTSD. ECF No. [142], at 25. Dr. Saez diagnosed Mr. Murphy with PTSD. *Id.* Therefore, Atlantic contends that any potential testimony from Dr. Tolchin regarding Mr. Murphy's PTSD evaluation would be inadmissible hearsay. Furthermore, Atlantic claims there is no record evidence that Mr. Murphy's PTSD was caused by the subject accident and all such evidence regarding Mr. Murphy's PTSD diagnosis should be excluded. *See id.*

Plaintiffs maintain that, as Mr. Murphy's treating physicians, Dr. Tolchin and Dr. Estape "can offer any opinions they came to as a result of their care and treatment." ECF No. [142] at 26. Thus, neither treating physicians should be precluded from testifying that the medical issues Mr. Murphy is experiencing, including PTSD, are a result of the plane crash.

In this jurisdiction "a physician need not necessarily examine a patient, interview that patient, or speak with the patient's treating physician(s) in order to render opinions regarding diagnosis prognosis, course of treatment and perhaps even causation." *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216 (S.D. Fla. 2016) (quoting *Haller v. AstraZeneca Pharm*. LP, 598

F. Supp. 2d 1271, 1294-95 (M.D. Fla. 2009)).[3] Since Dr. Tolchin is an expert physician in this case, *see* ECF No. [57], he does not need to have personally diagnosed Mr. Murphy in order to render an opinion on his diagnosis. Additionally, Dr. Tolchin will not be precluded from opining on Mr. Murphy's PTSD simply because he relied on another physician's medical records to form his opinion. *See In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 127 F. Supp. 3d 1306, 1325 (N.D. Ga. 2015) ("It is commonly accepted that medical records and statements by a patient's treating physician are materials upon which testifying medical experts may reasonably rely.").

The Court also disagrees that Dr. Tolchin's disclosure is insufficient. Pursuant to Rule 26(a)(2)(C), a non-retained expert must provide a disclosure that states (1) "the subject matter on which the witness is expected to present evidence," and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Dr. Tolchin has adequately articulated the subject matter of which he intends to testify, namely, "Mr. Murphy's medical treatment, including his diagnosis and opinions obtained through treatment." ECF No. [57] at 3. He has also provided a summary of the facts and opinions he intends to present. *See id.* The Court does not find that Dr. Tolchin's disclosure is deficient because he did not specifically state that he would testify as to Mr. Murphy's PTSD.[4] Consequently, the Court will not prevent Plaintiffs from

---

[3] *See also Rafferty v. Erhard*, No. 09–CV–1019, 2012 WL 2577473, at *7 (W.D.N.Y. July 3, 2012) ("[T]he fact that a physician has not examined the plaintiff does not necessitate a finding that any such expert report or testimony offered by the physician is inadmissible under Daubert.").

[4] Additionally, the Court does not see a reason why Dr. Tolchin should be precluded from opining on the cause of Mr. Murphy's PTSD. As a medical expert witness, Dr. Tolchin may opine that the plane crash caused Mr. Murphy's PTSD.

introducing evidence that Mr. Murphy now suffers from PTSD as a result of the plane crash. Atlantic's sixth motion *in limine* is denied.

### vii. Preclude Argument, Testimony, or Evidence Regarding Alleged Business Damages, Lost Customers, Lost Profits, or Lost Income to Non-Party Entities

Atlantic seeks to preclude testimony or evidence regarding Plaintiffs' alleged business damages, lost customers, or lost profits as a result of the plane crash.

Plaintiffs own several companies, but as Atlantic notes, none of Plaintiffs' business entities is a party in this case. Accordingly, Atlantic argues that any damages or lost profits those businesses suffered are irrelevant to these proceedings and are based on speculation and hearsay. As such, Atlantic asserts "Plaintiffs should not be able to introduce speculative testimony or hearsay evidence regarding the accident's impact on Plaintiffs' non-party business entities, or to claim lost business income as damages in this matter." ECF No. [142] at 27.

Plaintiffs do not oppose Atlantic's motion *in limine* to the extent it only seeks to preclude testimony or evidence regarding damages and lost profits to Plaintiffs' non-party business entities. However, Plaintiffs insist that Mr. Murphy "should not be precluded from testifying regarding how his injuries [from the crash] may limit him, including how it affects his work." *Id.* at 28. Because the Court does not read Atlantic's motion *in limine* to seek to limit Mr. Murphy's from testifying about his own injuries and how it affects his ability to carry on his day-to-day work activities, the Court finds there is no opposition to the motion. Accordingly, Atlantic's seventh motion *in limine* is granted.

### viii. Preclude Argument, Testimony, or Evidence Regarding Lost Personal Income

Atlantic seeks to preclude Plaintiffs from introducing testimony or evidence about Plaintiffs' lost personal income. Atlantic claims such evidence should be precluded because

Case No. 23-cv-23654-BLOOM/Torres

Plaintiffs have failed to specify the amount of lost income and have not offered "any evidence substantiating these alleged damages." ECF No. [142] at 29. Therefore, Atlantic contends any lost income would be based on pure speculation. *Id.*

Plaintiffs do not object to the exclusion of evidence or testimony on lost profits or income. Plaintiffs assert that they only intend to seek out-of-pocket expenses such as the costs of out-of-pocket medical expenses. *Id.* at 30.  Because Plaintiff does not object to Atlantic's eighth motion *in limine*, and the motion is granted.

### ix. Preclude Argument, Testimony, or Evidence Regarding Loss of Future Earnings or Future Earning Capacity

Atlantic seeks to preclude Plaintiffs from arguing or offering testimony regarding the Plaintiffs' alleged lost earning capacity. Atlantic asserts that Mr. Murphy has only vaguely alluded to not being able to continue offering fishing charters in the future. According to Atlantic, Mr. Murphy "has admitted there is no other way that he feels his earning capacity has been diminished." ECF No. [142] at 31 (citing Exhibit F, Richard Murphy May 6, 2024 Dep. Tr. at p. 73:4-7). Atlantic maintains there is no other evidence that Mr. Murphy's earning capacity has been impacted, and thus, the evidence on this issue is far too speculative to be presented to a jury. Atlantic also argues Mr. Murphy is not competent to testify "whether his earning capacity has been dismissed as a result of the accident," as such an opinion constitute expert testimony. *Id.*

Plaintiffs argue that Mr. Murphy "should not be precluded from testifying regarding how his injuries may limit him, including how it affects his work." *Id.* at 32. Plaintiffs note there is evidence that Mr. Murphy suffered both back and neck injuries as well as emotional injuries as a result of the plane crash. Plaintiff contends that Mr. Murphy should be allowed to testify "how he feels [these injuries] will affect his day to day work and ability to work as a fishing captain." *Id.*

22

However, Plaintiffs offer no evidence which would support Mr. Murphy's lost earning capacity. Under Florida Law, a party may only recover "for lost earning capacity where the loss can be established with reasonable certainty." *Russ v. Berchtold Corp.*, Case No. 12-cv-24482-UU, 2013 WL 12092681, at \*4 (S.D. Fla. Nov. 20, 2013). "A plaintiff must demonstrate not only a reasonable certainty of some loss of earning capacity but must also prove the extent of such loss to a reasonable certainty." *Id.* Plaintiffs believe testimony about how Mr. Murphy "feels" his injury will affect his work satisfies the reasonable certainty requirement to prove loss of earning capacity. The Court is not convinced. Not only are Mr. Murphy's feelings about his limitations following the plane crash far too speculative to demonstrate that he suffered a loss in earning capacity, but Plaintiffs also fail to offer any evidence which would prove the *extent* of the loss in earning capacity. *See SMS Audio, LLC v. Belson*, Case No. 9:16-cv-81308-MIDDLEBROOKS, 2017 WL 11631378, at \*4 (S.D. Fla. Apr. 24. 2017) ("[L]ost profits must be a 'natural, proximate, probable or direct consequence of the [defendant's] act.'"… Plaintiffs may not recover for 'uncertain damages,' or those that are 'not the certain result of the wrong.'") (quoting *Taylor Imp. Motors, Inc. v. Smiley*, 143 So. 2d 66, 67-68 (Fla. 3d DCA 1962) and *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)). Plaintiffs do not assert that they intend to show earnings statements indicating how much Mr. Murphy was earning before versus how much less he is earning today, nor do they intend to present any evidence that his injuries have prevented him from earning income because of his inability to perform all the duties required of his job. As such, Atlantic's ninth motion *in limine* is granted.

**x. Preclude Hearsay Evidence and Speculative Testimony Regarding Lost Customers or Customers' Motivations for Stopping or Reducing Business with Non-Party Business Entities**

Atlantic contends that if the Court does not exclude all evidence regarding lost business income, "Plaintiff should [still] be precluded from introducing hearsay and speculative testimony regarding the purported reasons why customers or sponsors reduced or stopped business with Plaintiffs' companies." ECF No. [142] at 33. Specifically, Atlantic seeks to exclude testimony regarding Diamond Fishing Products' decision to decline to renew a contract with one of Plaintiffs' companies due to Mr. Murphy's accident. According to Atlantic, the evidence would be that Ms. De Leon "was told Diamond Fishing did not want to re-sign because they signed up for Rick [Murphy] to be filming the shows and not anyone else in his place." *Id.* Because the proposed evidence is based on what Ms. De Leon heard from Diamond Fishing, the testimony would constitute inadmissible hearsay. Additionally, Atlantic argues that the evidence is inadmissible because it would require speculation that the reason sponsors decided not to renew contracts was due to Mr. Murphy's injuries. Atlantic claims the evidence should also be excluded on Rule 403 grounds because the proposed evidence is not based on personal knowledge and would ultimately confuse and mislead the jury about the relevant issues in the case.

While Plaintiffs did not object to Atlantic's seventh or eighth motion *in limine* which sought to preclude Plaintiffs from introducing any evidence on lost business profits as well as lost personal profits, Plaintiffs now oppose Atlantic's more narrow motion which only seeks to exclude testimony regarding the Plaintiffs' companies' alleged loss of customers and sponsors following the plane crash. Although Plaintiffs previously stated they are "only seeking out of pocket expenses," Plaintiffs now wish to introduce evidence on the loss of certain business opportunities. ECF No. [142] at 30. Plaintiffs argue that such evidence is admissible because "there is testimony

24

that certain business opportunities were not pursued by a vendor because of the uncertainty surrounding Rick Murphy's availability etc." ECF No. [142] at 34.

The Court agrees with Atlantic and finds that Plaintiffs' proposed testimony regarding lost customers and business opportunities is too speculative to be admitted. Plaintiffs are unable to offer any specificity to their claim that they suffered a loss in customers and business opportunities. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177-78 (11th Cir. 2002) ("[D]amages may not be awarded for lost profits when those profits are dependent on a party taking an action that it is unclear he would have taken."). As such, the Court grants Atlantic's tenth motion *in limine*.

### xi. Exclude Testimony and Records from Drs. Levi, Baker, and Spiroff

Atlantic seeks to exclude testimony, evidence, or records from Dr. Allan Levi, Dr. Tracey Baker, and Dr. Richard Spiroff pursuant to Fed. R. Civ. P. 37(c)(1). Atlantic asserts that Plaintiffs never produced medical or billing records from Dr. Levi or Dr. Baker at any point during these proceedings and claims it would be unfairly prejudiced if Dr. Levi and Dr. Baker were permitted to testify at trial without Plaintiffs ever having produced the relevant records related to their testimony.

Atlantic also argues that Plaintiffs failed to comply with Rule 26(a)(2) as Plaintiffs "did not designate any of these doctors as non-retained expert witnesses" or "provide summaries of [the doctors'] facts and opinions." ECF No. [142] at 35. Therefore, all three doctors should be precluded from providing expert testimony and opinions on causation. Consequently, since none of these doctors can provide medical causation testimony, and Plaintiff has not otherwise designated a medical expert to provide causation testimony, Atlantic contends that any lay testimony regarding their treatment of Mr. Murphy would be irrelevant as there is no evidence that can connect their treatment to the plane crash at issue in this case. *See id.*

Case No. 23-cv-23654-BLOOM/Torres

Although Plaintiffs do not explicitly state whether or not they oppose Atlantic's motion *in limine*, Plaintiffs state "[n]o evidence should be introduced regarding these doctors." *Id.* at 36. Because Plaintiffs offer no opposition to Atlantic's eleventh motion *in limine*, it is granted.

**IV.    CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the parties' Motions *in Limine*, **ECF No. [142],** are **GRANTED IN PART** and **DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 30, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

26