UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-23654-BLOOM/Torres

RICHARD C. MURPHY, III; and
KATHLEEN T. MURPHY, his wife

    Plaintiff,

v.

AIRWAY AIR CHARTER, INC.
d/b/a Noble Air Charter; VENTURE
AIR SOLUTIONS, INC.;
ALEX GUTIERREZ, individually; and,
ATLANTIC AVIATION – OPA LOCKA
LLC d/b/a Atlantic Aviation

    Defendants.
_____/

## ORDER ON MOTION FOR NEW TRIAL

**THIS CAUSE** is before the Court upon Defendants Airway Air Charter Inc. d/b/a Noble Air Charter ("Noble") and Alex Gutierrez's ("Gutierrez") (collectively "Defendants") Motion for a New Trial, ECF No. [208], and Renewed Motion for Judgment as a Matter of Law, ECF No. [209]. Plaintiff Richard C. Murphy, III, ("Murphy") filed a Response in Opposition to both the Motion for New Trial, ECF No. [214] ("Response in Opposition to Motion for New Trial"), and the Renewed Motion for Judgment as a Matter of Law, ECF No. [215] ("Response in Opposition to Renewed Motion for Judgment as a Matter of Law"), to which Defendants filed Replies, ECF No. [219], [220]. The Court has carefully reviewed the Motions, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are denied.

**I.     BACKGROUND**

This matter arose as a result of Plaintiff boarding a Noble Airlines charter from Opa-Locka, Florida, that ultimately crashed into the sea prior to arriving at its destination in Chub Cay, Bahamas. Following the crash, Plaintiff filed the instant action asserting Warsaw Convention claims against both Noble and Gutierrez (the pilot) for the injuries Plaintiff suffered from the plane crash. ECF No. [37].

The case eventually proceeded to trial, where the jury found in favor of Plaintiff. ECF No. [179]. The jury concluded Plaintiff was 20% responsible for his own injuries and, because of their negligent actions, Noble and Gutierrez were each 40% responsible for Plaintiff's injuries. *Id.* Thus, Consistent with the jury's verdict, the Court entered a judgment in favor of Plaintiff and against Defendants in the amount of $2,329,670.40, which represented the $2,912,888 of total damages minus the damages attributed to Plaintiff. *Id.*

Defendants now seek a new trial and judgment as a matter of law. ECF No. [208], [209]. Defendants seek a new trial because (1) the Court erred by not allowing jury instructions or interrogatories on the verdict form which assigned culpability to Cessna; (2) a new video was admitted into evidence that was not disclosed until the third day of trial; (3) the final judgment impermissibly held Gutierrez liable for the conduct of Noble; (4) the Final Judgment improperly awarded damages that Plaintiff withdrew and therefore did not seek; and (5) Plaintiff's only claims against Defendants were causes of action under the Warsaw Convention which the Court found inapplicable to the case.[1] ECF No. [208] at 2-3.

---

[1] While Defendants state that they intended to argue that a new trial is warranted because the Court failed to address the implications of Noble filing a suggestion of bankruptcy, Defendants failed to address the argument in the remainder of their brief. Accordingly, the argument is waived. *See Hibbettt Retail, Inc. v. TCH Development, Inc.*, Case No.: 2:23-cv-00558, 2025 WL 73253, at *13 (N.D. Ala. Jan. 10, 2025) ("Numerous cases indicate that the burden rests on the parties to present arguments to the court, and that issues not substantively and meaningfully argued are waived.").

Plaintiff responds that (1) the weight of the evidence did not support including Cessna in the jury instructions or the verdict form, and because the Warsaw claims are governed by admiralty law and a federal treaty, not Florida substantive law, Defendants were not entitled to a *Fabre* defense or an apportionment of fault; (2) the video Defendants point to was not "new" but instead was simply zoomed in and therefore did not prejudice the case; (3) the Final Judgment is correct because there is no apportionment of fault under the Montreal Convention, and under admiralty law, defendants are joint and severally liable; (4) while Plaintiff tried to waive his past medical damages, no defendant agreed, and thus, the jury was permitted to consider the evidence regarding past medical expenses; and (5) there is no substantive difference between the Warsaw Convention and the Montreal Convention that would affect the outcome of this case. ECF No. [214].

In their Renewed Motion for Judgment as a Matter of Law, Defendants contend that although Plaintiff brought claims under the Warsaw Convention, the applicable law governing the case is the Montreal Convention. ECF No. [209] at 2-3. Therefore, since Plaintiff failed to bring any claims against Defendants under the Montreal Convention, Defendants maintain that Plaintiff failed to assert a claim upon which relief can be granted. *Id.* Moreover, even assuming Plaintiff adequately stated a claim, Defendants contend that since the Montreal and Warsaw Conventions provide significantly different defenses, Defendants were unfairly prejudiced as they never had an opportunity to properly plead and conduct discovery to support the defenses available under the Montreal Convention. *Id.*

Plaintiff responds that there is no substantive difference between the Warsaw and Montreal Convention that is relevant to this case. ECF No. [215]. Regardless, Plaintiff contends that Defendants were not prejudiced by any distinction because Defendants tried the case under the Montreal Convention with all available defenses at trial. *Id.* at 4. Although the defenses were

3

available, Defendants elected not to put on any type of defense and simply rested at the close of Plaintiff's case-in-chief. As such, Plaintiff maintains that Defendants' Renewed Motion should be denied. *Id.*

## II. LEGAL STANDARD

### A. Motion for a New Trial

Pursuant to Federal Rule of Civil Procedure 59(a)(1), "[t]he court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A motion for new trial may be brought on the basis that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the [moving party]; and [a motion for new trial] may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Alphamed Pharm. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1334 (S.D. Fla. 2006) (quoting *Montgomery Ward & Co.*, 311 U.S. 243, 251 (1940)).

"A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich. Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "In assessing evidentiary rulings already made by this Court, the question is whether the exclusion or admission of evidence affected Defendant's substantial rights." *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 608 F. Supp. 3d 1231, 1239 (S.D. Fla. 2022). Further, "[b]ecause it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum,

4

the verdict is against the great—not merely the greater—weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186.

### B. Rule 50—Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 "governs motions for judgment as a matter of law in jury trials [and] allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 447-48 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed. 1995)).

Under Rule 50, "judgment as a matter of law is appropriate only if the facts and inferences point so overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (quotation marks omitted; alteration in the original). The Court must consider the evidence in the light most favorable to the nonmoving party and determine "whether or not reasonable jurors could have concluded as this jury did based on the evidence presented." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997) (citation omitted). It is "the jury's task," not the Court's, "to weigh conflicted evidence and inferences, and determine the credibility of witnesses." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Insofar as the evidence is considered when reviewing a motion for judgment as a matter of law, the Supreme Court has stated:

> [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (internal quotations omitted) (citations omitted), quoted in *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1127 (11th Cir. 2016).

If the court does not grant a Rule 50(a) motion, the movant may file "a renewed motion," under Fed. R. Civ. P. 50(b). A Rule 50(b) motion is made after the case has been submitted to the jury, "thereby insuring that a motion for such a judgment is used only to invite the district court to reexamine its decision not to direct a verdict as a matter of law, not to reexamine facts found by the jury." 27A Fed. Proc., L. Ed. § 62:695 (Supp. 2022) (emphasis added). "[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).

> "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)]." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration in original) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed. 1995)). Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient . . . to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

*McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016); *see also Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1127 (11th Cir. 2007) ("Regardless of timing, [ ] in deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence. The question before the district court regarding a motion for

judgment as a matter of law remains whether the evidence is "legally sufficient to find for the party on that issue," [ ] regardless of whether the district court's analysis is undertaken before or after submitting the case to the jury.").

### III. DISCUSSION

#### A. Basis for a New Trial And Judgment as a Matter of Law

##### a. Inclusion of Non-Party Cessna on Jury Instructions and Verdict Form

Defendants contend that under the governing law, they were entitled to assert a *Fabre* defense, which would allow Defendants to "specifically name the Cessna Aircraft Corporation ("Cessna") as a non-party defendant whose fault caused or contributed to the accident subject of this case." ECF No. [208] at 4. Not only did they properly assert a valid *Fabre* defense, Defendants contend that instructions regarding the defense were appropriate given the weight of the evidence in the record. Specifically, Defendants point out that the expert witness, Mark Pottinger, testified "that Cessna designed the Aircraft in such a manner that even if the Aircraft had ample fuel on board, the pilot could not access the fuel when he needed it the most—when the engine failed." *Id.* at 4-5. Given this testimony that suggests that an aircraft design issue may have contributed to the crash and the "introduction of the Manuel (Cessna's Pilot Operating Handbook) outlining the faulty design," Defendants maintain that the jury should have been instructed on the apportioning of fault to third parties and given the option to apportion fault to Cessna on the verdict form. *Id.*

Plaintiff responds that his claims against Defendants are governed by "Admiralty and Federal law," not Florida substantive law. ECF No. [214] at 2. Therefore, since the *Fabre* defense derives from Florida substantive law, Defendants may not rely on the affirmative defense for these claims. *See id.* at 3.

Furthermore, Plaintiff maintains that the Montreal Convention "only allows for limitation of damages above the amounts established in Article 17 if the carrier [or pilot] prove that: '(a) such

damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.'" *Id.* at 3 (alterations in the original) (quoting Art. 21, Montreal Convention). Accordingly, Plaintiff contends there was no need for Cessna to be included on the verdict form or jury instructions given the fact that Noble and Gutierrez could only limit their damages based on Cessna's conduct if they showed Cessna was solely responsible for the alleged injuries. *Id.* Since a finding that Cessna was the sole tortfeasor could have been reflected on the verdict form by the jury simply answering no to the question of whether Noble or Gutierrez were negligent or by listing a zero next to the Defendants when determining their percentage of fault, there was no need to alter the jury instructions or verdict form to include Cessna. *See id.*

Moreover, Plaintiff argues that even if Defendants are correct on the law, the clear weight of the evidence counseled against including Cessna on the verdict form. *Id.* at 3-4. Plaintiff argues that Defendants did not have their expert testify as to a product defect, nor did they present any other evidence that the plane was defective. *Id.* at 4. Plaintiff acknowledges Defendants' cross-examination of Mr. Pottinger, where Pottinger confirmed a pilot could not access the auxiliary tanks on the plane when he needed them most—after the pilot had already run the main tanks dry—but argues that this theory is logically flawed and wholly insufficient to establish an affirmative defense. *Id.* at 4-5. Plaintiff contends that Mr. Pottinger's testimony cannot be the sole basis for a defense since he "was never asked to analyze the design of the aircraft or the procedures." *Id.* at 5. Accordingly, Defendants failed to identify a design defect that would be sufficient to establish Cessna's liability as an affirmative defense as a matter of law. *See id.* at 5.

The Court rejects Defendants' argument regarding the inclusion of Cessna in the jury instructions and verdict form. As Plaintiff correctly points out, the claims against Noble and

8

Gutierrez were brought pursuant to a treaty and under maritime law,[2] not state law. *See* ECF No. [1] ("Pursuant to 28 U.S.C. § 1333, this Court has original subject matter jurisdiction over Plaintiffs' claim because it arises under admiralty jurisdiction. . . . Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over Plaintiffs' claim because it arises under an international treaty"); ECF No. [37]. Nevertheless, Defendants argue that they are still entitled to assert a *Fabre* defense yet offer no case law which supports their contention. The *Fabre* defense is an apportionment of fault theory of liability unique to Florida law and is generally not recognized as an available defense under federal law or maritime law.[3] *See Christie v. Royal Caribbean Cruises, Ltd.*, Case No. 20-22439, 2021 WL 2217495, at *6 (S.D. Fla. Jan. 9, 2021) ("And because maritime law controls and a maritime action "does not recognize the concept of a *Fabre* defendant," the affirmative defenses based on the doctrine of Florida comparative fault principles must be stricken."); *Farley v. Magnum Marine Corp.*, N.V., No. 89-0725-CV, 1995 WL 795711, at *6 (S.D. Fla. June 9, 1995) ("Because federal maritime law requires the court to apply principles of joint and several liability, it would be error to allocate fault between defendant and nonparties in accordance with the relevant Florida rule.") (citing *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 718-19 (11th Cir. 1982)); *Cf. W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-05263-VMC, 2024 WL 2892322, at *2 (N.D. Ga. June 10, 2024) (noting that "joint and several liability is the traditional rule for federal torts."). The claims at issue were brought pursuant to a treaty and arise, in part, under admiralty law, and therefore, are governed under federal law. Accordingly, since

---

[2] *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("[I]f the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case.").

[3] *See Sea Byte, Inc. v. Hudson Marine Management Servs. Inc.*, 565 F.3d 1293, 1298 (11th Cir. 2009) ("Where a case arises in admiralty, we apply the general maritime law. . .. General maritime law is federal law") (citing *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co. Inc.*, 207 F.3d 1247, 1250 (11th Cir. 2000)).

9

Defendants offer no legal basis as to why the Court should have permitted Defendants to assert a Florida state law defense against a federal cause of action, particularly where federal maritime law explicitly bars such a defense,[4] the Court finds that the jury instructions and verdict form were appropriate.

Moreover, even if a state-based defense was permitted, Defendants would still not be able to include Cessna as a *Fabre* defendant as there was insufficient evidence to include Cessna as a tortfeasor in the case. As such, the ground for new trial based on the exclusion of Cessna from the jury instructions and verdict form is rejected.

### b. Admission of Enhanced Surveillance Video

Defendants argue that Plaintiff "introduced previously undisclosed evidence in the form of enhanced videos of Plaintiff's Exhibit 3 and 4[.]" ECF No. [208] at 10. According to Defendants, not only was the enhanced nature of the evidence highly prejudicial, but the videos were "directly related to the main issues in this case of whether the fuel was put into the auxiliary tanks or tank tips, and whether Alex Gutierrez instructed fact witness Alexander Rizzo to fuel the auxiliary tanks instead of the main tanks." *Id.* Therefore, since Plaintiff offered no reason for the delay in disclosing the enhanced videos, and there is no doubt the delay in disclosure impacted the outcome of the case, Defendants argue a new trial is appropriate. *See id.*

Plaintiff responds that "[t]here is no new video" and that the "videos were exchanged in discovery long ago." ECF No. [214]. According to Plaintiff, the videos introduced are exactly the same videos as Plaintiff's Exhibits 3 and 4, the only difference being that the "new" videos are "merely zoomed in on the relevant action." *Id.* at 6.

---

[4] *See Christie v. Royal Caribbean Cruises, Ltd.*, 2021 WL 2217495, at *6.

In any event, Plaintiff contends that the admissibility of the "new" video falls within the Court's broad discretion to admit evidence as there was no undue prejudice as a result of their introduction. *See id.* Although Defendants assert that the late disclosure precluded them from questioning an expert or Rizzo about the new videos, Plaintiff responds that any late disclosure had no impact given that Defendants did not call witnesses to discuss any of the videos, and instead, simply rested their case at the close of Plaintiff's case-in-chief. *Id.* at 7. Plaintiff asserts that since Defendants failed to call experts about the videos they already had long before the start of trial, it is unlikely they would have decided to call an expert or ask Rizzo additional questions about the zoomed-in version of the video given that the contents of the "old" videos and the "new" videos were exactly the same. Thus, Plaintiff maintains the late production of a zoomed-in version of the videos is not a basis for a new trial.

Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)[5] or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or *is harmless*." Fed. R. Evid. 37(c)(1) (emphasis added). To the extent the zoomed-in videos in question are "new" exhibits, their disclosure was untimely since Plaintiff did not provide the videos to Defendants until trial. *See* Fed. R. Evid. 26(a)(3)(B) ("Unless the court orders otherwise, [Rule 26(a)(3)] disclosures must be made at least 30 days before trial."). Nevertheless, the Court finds the delayed disclosure of the zoomed-in videos harmless.[6] At trial, the Court concluded the videos in question were virtually identical to the videos Plaintiff initially turned over to Defendants in discovery. The only difference being that these "new videos" were

---

[5] *See* Fed. R. Civ. P. 26(a)(3)(A)(iii) (requiring parties to identify before trial any document or exhibit it expects to offer at trial, unless evidence is presented solely for impeachment).

[6] The Court will not address the substantially justified prong of Rule 37 as Plaintiff never explained why he did not turn over the enhanced videos in a timely fashion.

11

zoomed in to more easily observe the fueling of the plane before take-off. There is nothing inherently prejudicial about making it easier for the jury to review a video, and at trial, Defendants did not articulate how these videos created an unfair surprise or otherwise prejudiced their case. *See WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, No. CA 13-0434-KD-N, 2015 WL 6964658, at *2 (S.D. Ala. Nov. 10, 2015), *aff'd sub nom.* 672 F. App'x 931 (11th Cir. 2016) (explaining the purpose of timely Rule 26 disclosures "is to prevent unfair surprise or prejudice at trial.").

Even now, Defendants have failed to offer any evidence that the contents of the original videos were edited or altered, or that the introduction of the videos prejudiced their defense.[7] Defendants insist that the late disclosure precluded them from hiring an expert to analyze the enhanced videos and ask additional cross-examination questions of Alex Rizzo about the videos "which would have certainly led the jury to a total[ly] different result." ECF No. [208] at 15. However, Defendants fail to explain what additional questions they might have asked Rizzo or how those questions would have impacted the case. Therefore, it is unclear why Defendants believe the late disclosure affected the outcome of the trial.

Moreover, Defendants had more than sufficient time to review the contents of the original videos and could have had their expert examine a zoomed-in version of those videos if they believed the enhancement would have impacted the expert's analysis. In any event, the Court is not convinced that the enhanced videos prejudiced Defendants' case. While the new videos certainly made it easier for the jury to see what was happening, Plaintiff could have still relied on

---

[7] Defendants seem to acknowledge there is no discernable differences between the original videos and the new zoomed-in videos that would be readily observable to a juror. Defendants contend they would need an expert to determine "how the videos were enhanced, if and how they were modified, or altered and what contents, color, shading, hue, exposure, highlights, contrast, etc. were added." ECF No. [208] at 11. However, if it would require an expert to notice any potential differences in the videos, it seems highly unlikely that such differences would unfairly prejudice the jury's impression of the case.

the original videos to prove his case and elicit virtually the same testimony from his witnesses, given that the content of the original videos and zoomed-in videos were identical. Accordingly, the Court finds no prejudice, let alone undue prejudice, that would warrant a new trial.

### c. Whether the Final Judgment Improperly Holds Alex Gutierrez Liable for the Damages Attributable to His Employer (Noble)

Defendants contend, under Florida law, defendants are generally not jointly and severally liable for their claims. ECF No. [208] at 16. As such, Defendants should not have been held jointly liable for the damages in this case. *See id.* Additionally, Defendants maintain that neither the Montreal nor Warsaw Conventions "provide for finding the agent liable for the damages attributable to the principal." *Id.* Although the Montreal Convention provides that acts of the servant may be imputed on the carrier, "[n]othing in the Montreal Convention or similar jurisprudence permits the acts of the carrier to be imputed on the servant." *Id.*

Plaintiff maintains that the Final Judgment's imposition of joint and several liability is correct because there is no apportionment of fault under admiralty law or the Montreal Convention. ECF No. [214] at 7. Plaintiff argues the relevant provisions of the Montreal Convention—Article 20, Article 21, and Article 30—do not give carriers or the servant of the carrier "a reduction of liability based on the negligence or fault of the other." *Id.* at 8. Plaintiff further notes that under well-established principles of admiralty law, joint and several liability is the default, especially in circumstances such as this where Defendants "refused to put forth evidence of anyone's fault in the accident." *Id.* Accordingly, given the governing law, Plaintiff contends there is no basis to argue the Final Judgment failed to properly apportion fault among Noble and Gutierrez.

Plaintiff is correct that since the claims against Noble and Gutierrez arose under the Montreal Convention, and more importantly, general maritime law, "'the principles of joint and several liability under which a plaintiff may obtain judgment for the full amount against any and

all joint tortfeasors without regard to percentage of fault,' are binding." *Wiegand v. Royal Caribbean Cruises Ltd.*, 473 F. Supp. 3d 1348, 1351 (S.D. Fla. 2020) (quoting *Groff v. Chandris, Inc.*, 835 F. Supp. 1408, 1410 (S.D. Fla. 1993)); *see also Red Roof Inns, Inc.*, 2024 WL 2892322, at *2 (noting that "joint and several liability is the traditional rule for federal torts.").

Defendants attempt to argue that the Montreal Convention only makes a principal liable for damages attributable to its agent but not vice versa. Therefore, Gutierrez cannot be held liable for Noble's negligence. However, this argument is misplaced. "Joint and several liability applies when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220-21 (1994); *see also Honeycutt v. United States*, 581 U.S. 443, 447 (2017). Therefore, Plaintiff need not show that the defendants were liable to one another in order to proceed against either Defendant for the full satisfaction of the judgment.[8] Accordingly, since joint and several liability governs the final judgment here, there is no basis for a new trial on this issue.

### d. Whether the Final Judgment Includes an Award for Damages that Were Withdrawn by Plaintiff

Defendants also argue that the Final Judgment is invalid because it includes an award for damages for medical expenses that Plaintiff ultimately withdrew prior to the case being sent to the jury. ECF No. [208] at 16-17. Defendants recounted the exchange where Plaintiff asserted that he sought to waive past medicals, and Defendants claimed that "[m]edicals aren't part of this." *Id.* at 16. In the exchange, Defendants notes that the Court stated as follows: "I'm going to -- quite frankly, I'm going to—you may not be claiming it, and we can reduce that amount if there is any award." *Id.* at 17. In reliance on the Court's assertion, Defendants maintain they "did not defend damages related to medical expenses and did not address these during closing arguments." As

---

[8] Of course, joint and several liability is limited by the rule that the plaintiff may "recover only once for the full amount" of damages. *Honeycutt*, 581 U.S. at 447.

such, Defendants argue that the Court "improperly include[d] the withdrawn medical expenses" in the Final Judgment. *Id.*

Plaintiff responds that "Defendants had every opportunity to object or allow the past medicals not to be presented as a quantum of damages, but "[t]hey refused." ECF No. [214] at 8. More importantly, however, when Plaintiff attempted to waive his past damages, Defendants did not agree to the proposal. *Id.* Accordingly, Plaintiff contends his waiver was not valid, and as such, any "figure supported by unrebutted, non-objected to evidence," was appropriately incorporated into the total amount of the damages awarded in the Final Judgment. *Id.*

Defendants are correct that Plaintiff waived his claim for damages with respect to past medical expenses at the jury charge conference. It is well settled that the plaintiff is the master of [his] complaint," and as such, may withdraw any claim or request for damages during trial. *Hill v. Bell South Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004); *see Mighty v. Miami-Dade County*, No. 19-15052, 2021 WL 4022616, at *1 (11th Cir. Sept. 3, 2021) (acknowledging that a plaintiff may withdraw claims during trial); *Rinehart v. Kelly Buick GMC, Inc.*, Case No: 8:22-cv-324, 2024 WL 4793247, at *1 (M.D. Fla. Apr. 29, 2024) (same). Neither Defendants nor the Court may force Plaintiff to pursue relief that Plaintiff believes was not worth his time to litigate. Thus, Plaintiff's waiver of his claim for past medical expenses was valid, notwithstanding Defendants' alleged objections to the waiver. Therefore, the Court erred by including the jury's award for past medical expenses in the Final Judgment.

Nevertheless, this error does not require a new trial. The Eleventh Circuit has found that where a portion of a verdict for an identifiable amount is not permitted by law, the district court may simply reduce the judgment for the correct amount without having to hold a new trial. *See Holmes v. W. Palm Beach Hous. Auth.*, 309 F.3d 752, 758 (11th Cir. 2002); *Johansen v.*

*Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330–31 (11th Cir. 1999) ("Where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount."). As a matter of law, Plaintiff may not recover damages for past medical expenses that he expressly waived during trial. Since the past medical expenses were specifically itemized on the verdict form, the Court will simply reduce the Final Judgment by that amount awarded for past medical expenses without the need for a new trial. *See* ECF No. [179] (awarding $12,888.00 for the "total amount of Richard C. Murphy, III's damages for medical expenses incurred in the past).

### e. Whether Plaintiff Failed to Assert a Claim

Finally, Defendants contend in their Motion for New Trial and Renewed Motion for Judgment as a Matter of Law that Plaintiff's "sole cause of action asserted against Defendants Noble and Gutierrez was under the Warsaw Convention as amended by the Hague ('Warsaw')." ECF No. [208] at 17; ECF No. [209] at 5. Notwithstanding the Court informing the parties that the case was governed under the Montreal Convention, not the Warsaw Convention, Plaintiff never amended his claims against Defendants, and instead, continued to proceed under his Warsaw Convention claims at trial. *Id.* at 17-18. Accordingly, Defendants maintain they did not have a "reason, or obligation, to tailor [their] defenses and discovery efforts to anything except the Warsaw claims made against them." *Id.* at 18.

Furthermore, Defendants contend that the Warsaw Convention contains drastically different defenses compared to the Montreal Convention. *Id.* Under the Warsaw Convention, there is "an absolute defense to liability if the carrier can establish that it took all necessary measures to avoid the damage or that it was impossible for [the defendant] to take such measures." *Id.* Under the Montreal Convention, Defendants claim the relevant defense is "drastically different" as it

16

provides "'Exoneration' of the Defendant[s]." *Id.* Accordingly, since Defendants maintain Plaintiff did not properly plead his claims and Defendants did not have an opportunity to discover the defenses available under the Montreal Convention, the Court should either grant judgment as a matter of law for failure to state a claim or it "should grant a new trial so the Plaintiff can properly plead a cause of action and Defendant can properly plead, discover and prove by evidence the proper affirmative defenses." *See* ECF No. [208] at 18; ECF No. [209].

Plaintiff disagrees and argues that the Montreal and Warsaw Conventions' defenses "for negligence of the passenger are substantially the same."[9] ECF No. [214] at 9. Accordingly, Plaintiff contends Defendants cannot show that "the case would have been tried any differently simply because the pleadings invoke Warsaw and the Court (correctly) found that Montreal, its successor treaty[,] applies." *Id.*

Moreover, even if the relevant provisions were substantially similar, Plaintiff insists that the difference would not matter because Defendants were on adequate notice that the Montreal Convention was the governing law, and more importantly, "Defendants tried the case under Montreal with all available defenses through trial." *Id.* at 10. As such, there was no prejudice that would require a new trial simply because Plaintiff's claims against Defendant purport to be brought pursuant to the Warsaw Convention as opposed to the Montreal Convention. *See id.*

The Court finds that Plaintiff properly asserted claims upon which relief may be granted, and therefore, neither a judgment as a matter of law or a new trial is appropriate based on the nature of the claims. Defendants are correct that Plaintiff plead "Warsaw" claims against Noble and Gutierrez, notwithstanding that the Montreal Convention superseded and now governs the claims

---

[9] Plaintiff also argues that Article 20 of the Warsaw Convention has no bearing on this case as that provision pertains to damages occasioned by delays in the carriage of cargo. Accordingly, Plaintiff maintains any differences in the defense under that provision of the Warsaw Convention compared to the Montreal Convention is irrelevant.

17

at issue in this case. *See Fernandez v. Am. Airlines, Inc.*, No. 19-20724-CIV, 2019 WL 13258037, at *1 (S.D. Fla. Oct. 7, 2019) ("The Montreal Convention is an international treaty replacing the Warsaw Convention, which created a scheme governing international air carrier liability for damage to cargo and injury to passengers.") (citing *Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, F. Supp. 2d 1260, 1308 (S.D. Fla. 2009), *aff'd in part, vacated in part, rev'd in part*, 615 F.3d 1305 (11th Cir. 2010)). Therefore, it appears that, as a technical matter, Plaintiff plead claims under the incorrect governing law. Defendants contend that fact alone precludes Plaintiff from recovering on his claims against them. However, other courts have found that an erroneous reference to a statute is not necessarily fatal to a Plaintiff's claim because "[p]laintiffs in federal court are not required to plead legal theories." *Wiedman v. Canal Ins. Co.*, 1:15-cv-4182-WSD, 2017 WL 2311435, at *2 (N.D. Ga. May 25, 2017) (quoting *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 900 (N.D. Ill. 2011)); *see also King v. Butts Cty. Ga.*, 576 F. App'x 923, 931 (11th Cir. 2014) ("Several circuits have indicated that failure to plead the correct legal theory is not necessarily fatal to a plaintiff's claim when the defendant has sufficient and fair notice of the correct theory."); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (noting that "citing the wrong statute needn't be a fatal mistake"). So long as claims are based on the same set of facts and require the same analysis as the erroneously pled claims, then the plaintiff has provided fair and sufficient notice of the nature and grounds of the claims for the plaintiff to proceed. *See King*, 576 F. App'x at 931. Importantly, a Warsaw Convention claim involves the same elements as a Montreal Convention claim. *Compare Arellano v. Am. Airlines, Inc.*, 69 F. Supp. 3d 1345, 1348 (S.D. Fla. 2014) ("To prevail on a bodily injury claim under the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo, a plaintiff must establish: (1) the occurrence of an 'accident' within the meaning of the Convention; (2) the 'accident' occurred on

the aircraft or during the embarking or disembarking process; and (3) the plaintiff suffered bodily injury caused by the 'accident.'") *with Price v. KLM-Royal Dutch Airlines*, 107 F. Supp. 2d 1365, 1367–68 (N.D. Ga. 2000) ("Article 17 of the Convention provides, in relevant part, that a carrier is liable for 'damage sustained' as the result of 'bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft . . .' Warsaw Convention, Art.17."). Therefore, since a Warsaw Convention claim involves the same elements and analysis as a Montreal Convention claim, Defendants were on sufficient notice of the nature and grounds of the claims Plaintiff ultimately proceeded with at trial.

Defendants also argue that the available defenses under the Montreal Convention are substantively different than those available under the Warsaw Convention. Specifically, Defendants contend that while the Warsaw Convention only provides an absolute defense to liability when a defendant can show they are not at fault, the Montreal Convention provides for full or partial exoneration in Article 20 upon a showing "that damage was caused or contributed to by the negligence of the person suffering the damage."[10] Therefore, Defendants were unduly prejudiced by not being able to conduct discovery with knowledge of the unique defense available to them under the Montreal Convention. However, this argument is unpersuasive.

First, both Defendants asserted exoneration affirmative defenses in their Answers to the operative Complaint. *See* ECF No. [51] ("Plaintiffs assumed the risk, which proximately caused or proximately contributed to any injuries or damages which the Plaintiffs sustained, if any, and

---

[10] Insofar as Defendants try to raise a new argument in their Reply that they were prejudiced by not being able to conduct discovery regarding the defenses available under Article 21 of the Montreal Convention, the Court also rejects this argument. The Article 21 defenses under the Montreal Convention are substantially similar to those available under Warsaw Convention as both defenses require that Defendants show they were not negligent *at all* in order to avoid liability. *Compare* Article 20 of the Warsaw Convention *with* Article 21 of the Montreal Convention.

therefore, any award to which the Plaintiffs may be entitled should be either barred or reduced proportionately.") and ECF No. [52] (same). Moreover, at trial, Defendants specifically argued and presented evidence on Plaintiff's contributory negligence, and the jury ultimately found that Plaintiff was 20% responsible for the injuries he sustained as a result of the accident. ECF No. [179]. Therefore, to suggest that Defendants were denied an opportunity to either discover the exoneration defense or argue the defense at trial is not supported by the record.[11] As such, both Defendants' Motion for New Trial and their Renewed Motion for Judgment as a Matter of Law are rejected on this final ground as well.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for a New Trial, **ECF No. [208]**, is **DENIED**; and

2. Defendants' Renewed Motion for Judgment as a Matter of Law, **ECF No. [209]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 28, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[11] To the extent that Defendants argue that they were unduly prejudiced by not being able to assert a defense only available under the Warsaw Convention, *see* ECF No. [209] at 7, the Court finds no error as Defendants admit that the Montreal Convention is the correct governing law for this case.